# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JERRY L. PARHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-13-413-SPS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The claimant Jerry L. Parham requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born February 13, 1960, and was fifty-one years old at the time of the most recent administrative hearing (112, 794). He earned his GED and attended truck driver school, and has worked as a truck driver (Tr. 816). The claimant alleges that he has been unable to work since December 30, 2006 due to diabetes with insulin (Tr. 138).

## Procedural History

On January 26, 2007, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Deborah Rose conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 7, 2009 (Tr. 16-24). The Appeals Council denied review, but this Court reversed on appeal in Case No. CIV-09-326-RAW-SPS, and remanded the case to the ALJ with instructions to properly consider the "other source" opinions provided by mental health professionals (Tr. 837-348). ALJ Michael A. Kirkpatrick held a second administration hearing and again determined that the claimant was not disabled in a written opinion dated August 2, 2011 (Tr. 769-782). The Appeals Council again denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, he could lift 20 pounds occasionally or 10 pounds frequently, and stand/walk/sit for 6 hours in an 8-hour workday, but he had the additional limitations of performing simple, unskilled tasks which do not require interaction with the general public (Tr. 773). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the regional and national economies, *e. g.*, center punch operator and assembler (Tr. 782).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly consider his obesity in formulating the RFC, (ii) by failing to properly assess the "other source" opinions provided by counselor Gary P. Nelson and pychometrist Barbara Countz, and (iii) by improperly assessing his credibility. Because the ALJ *did fail* to follow the instructions of this Court in Case No. CIV-09-326-RAW-SPS, the decision of the Commissioner must be reversed and the case remanded for further proceedings.

The ALJ determined that the claimant had the severe impairments of insulin dependent diabetes mellitus with neuropathy, obesity, sleep apnea, and depression (Tr. 771). As to the claimant's mental impairments, the claimant was assessed by psychologist Theresa Horton, Ph.D., on March 23, 2007 evaluation. She noted in her evaluation that the claimant appeared angry and spoke flippantly, but his cooperation was

appropriate, and that he frequently expressed "in an upset tone how he cannot work, and cannot tolerate being on his feet" (Tr. 221). She noted that he had appropriate judgment, but very poor insight (Tr. 222). She assessed him with major depressive disorder, recurrent, severe with chronic irritability, personality disorder, NOS, with prominent narcissistic and avoidant traits, and insulin dependent diabetes (Tr. 222). She opined that he "appeared capable of understanding and managing simple and complex instructions and tasks," *but* that he would "have difficulty adjusting into occupational and social settings due to his abrasive personality traits, that likely are significantly further emphasized with this episode of depression" (Tr. 222). She further noted that his medications did not appear effective at the time and recommended a change, as well as the addition of counseling (Tr. 222).

On July 25, 2007, Dorothy Millican, Ph.D. reviewed the claimant's file and assessed him with moderate limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace, and also noted that he had experience one or two episodes of extended-duration decompensation (Tr. 282). Dr. Millican also completed a mental RFC assessment, indicating that the claimant was moderately limited in understanding and remembering detailed instructions and in carrying out detailed instructions, and markedly limited in interacting with the general public (Tr. 286-87). Dr. Millican then opined that the claimant could perform simple and some complex tasks, relate to supervisors and coworkers on a superficial work basis, and adapt to a work situation (Tr. 288).

On December 17, 2008, Ms. Countz evaluated the claimant for bipolar disorder, and administered a battery of tests. She described the claimant as demonstrating a "depressive affect, low mood, cynicism and lethargy" (Tr. 324). As relevant, Ms. Countz noted that MMPI-2 test scores raised concerns about possible over-reporting, and that the claimant did not meet the diagnostic criteria for bipolar disorder, *but* that his responses indicated considerable and pervasive emotional distress "that he is likely to see as a crisis" (Tr. 324). She assessed him with adjustment disorder with depressed mood, chronic, and ruled out malingering and a substance-induced mood disorder, and on Axis II assessed him with passive-aggressive personality disorder, rule-out obsessive-compulsive disorder (Tr. 325). She saw him as an immediate suicide risk, and indicated that mood-stabilizers and anti-depressants may be needed, and noted that the clamant had a pronounced lack of interest in his life, lack of interpersonal trust, and behavior-restricting fears (Tr. 325).

On February 2, 2009, therapist Gary Nelson completed a mental Medical Source Statement as to the claimant, finding that he had moderate impairments in remembering locations and work-like procedures; understanding and remembering detailed instructions; carrying out detailed instructions; performing activities within a schedule and maintaining regular attendance; working in coordination with or proximity to others; interacting appropriately with the general public; responding appropriately to changes in the work setting; and setting realistic goals or making plans independently of others (Tr. 327-328). Mr. Nelson further found that the claimant had marked impairments in the areas of carrying out very short and simple instructions, maintaining attention and

concentration for extended periods, and completing a normal workday and week without psychologically-based interruptions (Tr. 327-328). He noted mild limitations in all other areas (Tr. 327-328). Mr. Nelson also submitted a letter along with this assessment, in which he stated that in the past five months the claimant had been compliant with treatment and services, making all scheduled appointments and taking his medications (Tr. 329). Mr. Nelson also opined that, "[a] conclusion could be drawn that Mr. Parham's Mental Health issues date to an early age and have recently been manifested and exacerbated as a byproduct of his severe Diagnosis of Diabetes/Atrophy of right leg" (Tr. 330). Mr. Nelson submitted an updated MSS to the claimant's representative, indicating that the claimant had moderate limitations in the ability to remember locations and work-like procedures, understand and remember very short and simple instructions, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, make simple work-related decisions, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, and travel in unfamiliar places or use public transportation (Tr. 1047-1048). He indicated that the claimant had "marked" limitations in all other areas of functioning (Tr. 1047-1048). He attached treatment notes for the claimant, indicating that the claimant had been diagnosed with major depressive disorder, recurrent episode, moderate, generalized anxiety disorder, interpersonal problem, and observation of other suspected mental condition (Tr. 1053). He assessed the claimant with a global assessment of functioning (GAF) score of 52, with a 53 as the highest in the past year (Tr. 1052). He further stated that the claimant had made progress, but remained very

depressed and anxious, and continued to express feelings of helplessness. He stated that the claimant "still can't work," and had recently also been diagnosed with neuropathy of the right leg and needed continued services (Tr. 1052).

At a physical consultative examination on June 16, 2007, Dr. Johnson Gourd assessed the claimant with diabetes mellitus type 2, and depression together with a recent decline in his health, but that he appeared stable and not depressed on the date of the exam (Tr. 226). He noted that the claimant did have some anxiety about upcoming exams, however (Tr. 226). A state reviewing physician determined the next month that the claimant could perform the full range of light work (Tr. 291-292).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as the medical evidence. He twice made the boilerplate statement that he did not find the claimant credible (Tr. 774, 776), and discussed the physical and mental evidence in turn. As to the claimant's mental impairments, the ALJ summarized Dr. Horton's opinion, then determined that the claimant was more limited than her assessment indicated, and found he could perform only routine, unskilled tasks, and could not understand and manage complex instructions (Tr. 777). He did not give great weight to her statements regarding the claimant's abrasive personality because they had been emphasized by that episode of depression and it was "difficult to determine whether claimant's state at the time was consistent with his usual demeanor," and the claimant interacted with his physical therapist and treating physicians (Tr. 777). He recited Dr. Millican's findings, then stated that he gave them great weight because they were "well-supported by the evidence of record" (Tr. 777). He then turned to the opinions of Mr.

Nelson and Ms. Countz, stating that they were not medically accepted sources, and reciting the appropriate "other source" opinion analysis (Tr. 777-779). He declined to give controlling weight to their statements that the claimant was unable to sustain employment, as going to an area reserved to the Commissioner (Tr. 779). He then stated that there was little documentation from Mr. Nelson's treatment records, he only saw the claimant sporadically, and he did not reported significant or ongoing objective signs or findings (Tr. 779). As to Ms. Countz's statements regarding the claimant's cynicism and indecisiveness, he discredited it because she was not a physician and believed here statements were not supported by the record. He then stated that he did not believe the claimant had difficulty reaching treatment goals, because Mr. Nelson noted the claimant had made progress with treatment (Tr. 779). Continuing, the ALJ stated that Mr. Nelson's statement as to the claimant's RFC was not entitled to weight because there were no clinical findings, it was "inconsistent with the preponderance of the credible evidence of record, including other opinion evidence, and because of additional factors to include the claimant's lack of credibility" (Tr. 779). In further support for his rejection of all examining and treating opinions related to the claimant's mental impairments, the ALJ stated, "[I]t is not only unlikely that all objective critics will so agree, but probably even more unlikely that articulation of that judgment will extinguish all doubt among interested parties. Universal certitude is not the mandate of the regulations" (Tr. 779-780). He then rejected Mr. Nelson's assessed GAF score as nondispositive, and noted that the claimant's diabetes was not controlled due to his own noncompliance (Tr. 780-

781).  He thus determined that the claimant was capable of performing light work within the limitations stated above (Tr. 781).

Evidence dated after the date of the ALJ's opinion was submitted by the claimant's representative.  As relevant to this appeal, the evidence indicates that the claimant underwent surgery on his left shoulder, as well as two amputations related to his right foot (Tr. 450, 470, 636, 659).  Notations related to this evidence indicate repeated references to the claimant's noncompliance, and a specific notation indicated a serious concern that the claimant's noncompliance had a strong psychological component (Tr. 636).  During the claimant's second right forefoot procedure, the surgical history described the claimant's history of right fourth toe amputation which had an initial good outcome, but worsened following the claimant's noncompliance; in light of his noncompliance, the surgeon indicated that the claimant was at high risk for ultimate right below-knee amputation, and further had *both* the claimant *and* his wife sign consent for surgical intervention on the right forefoot (Tr. 637).

As the ALJ recognized, Social Security regulations do provide for the proper consideration of "other source" opinions such as those provided by Ms. Countz and Mr. Nelson herein.  *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" and by considering 20 C.F.R. §§ 404.1527, 416.927 factors in determining the weight of these opinions), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *1, *6 (Aug. 9, 2006) (discussing considerations of evidence from sources who are not acceptable medical sources and stating that

"[a]lthough there is a distinction between what an adjudicator *must consider* and what the adjudicator *must explain* in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.") [emphasis added]. The relevant factors for evaluating opinion evidence from other sources are: 1) the length of the relationship and frequency of contact, 2) whether the opinion is consistent with other evidence, 3) the extent the source provides relevant supporting evidence, 4) how well the source's opinion is explained, 5) whether the claimant's impairment is related to a source's specialty or area of expertise, and 6) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *4-5; 20 C.F.R. § 404.1527(d). On remand, the ALJ specifically enumerated these factors in connection with the evaluations by Ms. Countz and Mr. Nelson, but then rejected the opinions as not supported by objective evidence (despite the use of objective testing in the claimant's consultative exam with Ms. Countz) or consistent with other (unspecified) evidence. However, other source opinions are valuable and can be instructive on "key issues such as impairment severity and functional effects." *Bowman v. Astrue*, 511 F.3d 1270, 1274-75 (10th Cir. 2008) (discussing the application of SSR 06-03p and noting that "'[o]pinions from [other sources] . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.'"), *quoting* Soc. Sec. Rul., 06-03p, 2006 WL 2329939, at *3. In fact, Social Security

Regulation 06-03p states, "[D]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." SSR 06-03p, 2006 WL 2329939, at *5. This is especially true where, as here, the ALJ rejected these treating and examining sources in favor of a *nonexamining* opinion that *pre-dated* this relevant evidence. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). *See also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984).

The claimant's contention regarding his mental impairments and their effect on his ability to work is bolstered by evidence contained in the record but submitted after the ALJ issued his opinion on remand. In this regard, the evidence provides support for the consideration of the claimant's mental impairment *in combination with* his physical impairments, as his surgeons had serious concerns that his mental impairment was playing a large part in his noncompliance. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems

'severe' and those 'not severe.'") [emphasis in original]. Although this evidence related to a time period subsequent to the ALJ's decision, evidence of the claimant's condition after the termination of insured status may be relevant to the existence or severity of an impairment arising before termination. *See, e. g.*, *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984) ("[M]edical evidence of a claimant's condition subsequent to the expiration of the claimant's insured status is relevant evidence because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status."), *citing Bastian v. Schweiker*, 712 F.2d 1278, 1282 n.4 (8th Cir. 1983). *See also Nagle v. Commissioner of Social Security*, 1999 WL 777355, at *1 (6th Cir. Sept. 21, 1999) ("Evidence relating to a time outside the insured period is only minimally probative, but may be considered to the extent it illuminates a claimant's health before the expiration of his insured status.") [unpublished opinion] [internal citations omitted], *citing Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988), *citing Martonik v. Heckler*, 773 F.2d 236, 240-41 (8th Cir. 1985) (discussing *Bastian*).

Because the ALJ failed to properly consider the "other source" opinions as the Court instructed in CIV-09-326-RAW-SPS, the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further analysis. On remand, the claimant should review *all* the available evidence; if such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

**Conclusion**

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 30th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**